> The Court shall hold a conference to address the parties' discovery dispute in Courtroom 520 of the White Plains Federal Courthouse at 3:30 p.m. on April 7, 2022. The parties shall jointly submit, by March 31, 2022, any additional documentation (i.e., discovery requests and responses) necessary to adjudicate the dispute.
>
> The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 88.
>
> SO ORDERED.
>
> _/s/ Philip M. Halpern_
> Philip M. Halpern
> United States District Judge
>
> Dated:  White Plains, New York
>         March 11, 2022

**By ECF**

Hon. Philip M. Halpern
The Hon. Charles L. Brieant Jr. Federal Building and
300 Quarropas Street
White Plains, New York 10601

    Re:    *Somnia Inc. v. Change Healthcare T*
           Docket No. 19-cv-08983 (PMH)

Dear Judge Halpern:

       We write jointly to request a conference to address two discovery disputes that have arisen between Plaintiff Somnia, Inc. ("Somnia") and Defendant Change Healthcare Technology Enabled Services ("Change Healthcare"). The parties engaged in "meet and confer" calls on March 2 and March 7, 2022. Counsel participating included Jason Hsi and Gillian Barkins for Somnia and Cory Hohnbaum and Charles Spalding for Change Healthcare. The March 2 call lasted for approximately 30 minutes and the March 7 call lasted for approximately 20 minutes. The parties also exchanged correspondence regarding the disputes. Because the parties have been unable to resolve the disputes, the parties present this letter pursuant to the Court's Individual Rule 4(D).

**Factual Background**

       Somnia brought claims against Change Healthcare for breach of a Master Services Agreement ("MSA"). Under the MSA, Change Healthcare agreed to manage the day-to-day revenue cycle management ("RCM") for each one of Somnia's approximately 20 clients using a suite of specialized software. The RCM services consisted of, among other things, management of payer contracting and enrollment, provider credentialing, billing, collections, appeals, and other functions directly tied to the collection and reimbursement of monies for services rendered. The parties entered the MSA in December 2013, the "go-live" date of Change Healthcare's services was in March 2014, and the parties terminated their relationship in July 2018.

Hon. Philip M. Halpern
March 10, 2022
Page 2

**Procedural Background**

Following the Court's decision on Change Healthcare's motion to dismiss in February 2021, the parties exchanged written discovery in June 2021 and subsequently started their document productions. Change Healthcare made its first production of 80 documents on July 22, 2021, its second production of 7,231 documents on July 30, 2021, its third production of 15,871 documents on September 23, 2021, its fourth production of 8,605 documents on October 15, 2021, and its final production of 1,596 documents on February 7, 2022. Change Healthcare served its privilege log on February 25, 2022.

Despite the fact that Change was the party actively performing the day-to-day RCM services, and Somnia merely overseeing Change's performance and metrics, Change's production fell woefully short when compared to Somnia. In contrast to Change Healthcare's production of a total of approximately 30,000 documents (or 90,000 pages), from just ten upper-level individuals or custodians, Somnia gathered mailboxes from at least twenty-two custodians in its organization, and provided years-worth of data, for a total production of over 3 million pages of documents on a rolling basis. Review of these documents was a months-long process, and is still on-going with multiple attorneys actively engaged since last fall.

**Discovery Dispute 1 – Somnia's Request for Additional Custodians**

There are two issues requiring judicial intervention. First, Somnia contends that Change Healthcare should be required to search the files of at least 64 additional custodians, whom Change Healthcare outright ignored, from pertinent custodians. This meant that Change failed to produce any documents from the individuals who actually performed the underlying work on the Somnia accounts, such as the billers, coders, collection department, etc. While Change conceded that some custodians might be relevant, Change has rejected Somnia's request as untimely, and presumed

the Court would simply agree. Change further stated the excuse that it would be impossible to now complete these tasks within the current discovery schedule. In effect, Change has shirked its discovery obligations over the last few months, and asserts that it was incumbent on Somnia to raise an issue, notwithstanding Change's affirmative duty to produce relevant documents through and after the close of discovery. *See e.g.*, *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 357–58 (W.D.N.Y. 2011); *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, 2019 WL 5682635, at *2 (S.D.N.Y. Nov. 1, 2019). Furthermore, Somnia rejects any claims that it has acted in an untimely manner or that it has delayed seeking judicial resolution. Among other things, Change's production was being done on a rolling basis, such that Somnia reasonably assumed additional responsive documents would be produced without further demands. Moreover, Change's vague discovery responses did not alert Somnia that it would be withholding entire productions from dozens of custodians, nor did Change ever indicate that its production was completed or otherwise finished.

Change Healthcare disagrees that it should be required to add 64 custodians at this late stage in the case. Change Healthcare served its Responses to Plaintiff's First Requests for the Production of Documents on June 14, 2021. Therein, Change Healthcare agreed to conduct a "Reasonable Search" for documents responsive to certain requests and committed to "search records within its possession, custody, and control in reasonably accessible locations where relevant Documents are most likely to be located in the ordinary course of business." Change Healthcare also expressed its anticipation that the parties would negotiate and define search terms for each party to use to identify potentially responsive documents. Somnia, however, did not respond to Change Healthcare's objections, take issue with Change Healthcare's stated intention to conduct a Reasonable Search, or contact Change Healthcare to negotiate any parameters for

Hon. Philip M. Halpern
March 10, 2022
Page 4

document production. Change Healthcare thus proceeded with document production on its own by identifying relevant custodians, drafting search terms, reviewing responsive documents, logging privileged documents, and producing documents in response to Somnia's requests. Change Healthcare also undertook targeted document collection efforts to satisfy certain discrete categories of documents requested by Somnia. Notably, after Change Healthcare's fourth production in October 2021, Change Healthcare indicated to Somnia that its production was substantially complete. This is reflected in the parties' November 9, 2021 joint letter to the Court requesting an extension of discovery, which makes no reference to any forthcoming productions by Change Healthcare.

Somnia did not take any issue with any aspect of Change Healthcare's written responses or with its document productions until February 18, 2022, despite having had Change Healthcare's written responses for eight months, having had the bulk of Change Healthcare's production for four months, having jointly extended discovery multiple times, and after having agreed to an April 18 fact discovery deadline.

**Discovery Dispute 2 – Somnia's Request for Read-Only Access to Change Healthcare's Database**

In a letter, dated February 24, 2022, Somnia formally requested read-only access to data that Change Healthcare collected as part of its performance of its services. This letter followed prolonged back-and-forth correspondence in which Somnia requested read-only access as early as January 2022. As explained by Somnia's expert, which Somnia hired last summer, the information that Change possesses cannot be analyzed without the software from which it was derived because the raw data is unable to be cross-referenced. This is because the data and reports, and the detailed patient ledgers with all references, billing notes, outside documents and insurance replies, must be

Hon. Philip M. Halpern
March 10, 2022
Page 5

generated by the custom reporting features and internal reference capabilities within Change's billing systems. For instance, Marcum needs to be able to produce specific reports that can cross reference multiple documents (e.g., insurers' remittance advices and explanation of benefits ("EOBs"), as well as coded responses from insurance carriers) based upon situational factors. Attempts to re-create such capabilities from scratch would have placed an impossible burden on Marcum (and cost on Somnia). Importantly, Change cannot articulate any prejudice arising from Somnia's request. Again, Somnia merely seeks read-only access, such that the data cannot be manipulated or deleted in any permanent way. There is nothing proprietary that Somnia seeks from the data, and much of the data is arguably owned by Somnia in any event. Lastly, Change Healthcare does not deny that it would be a minimal cost to it to allow for such access. Such a request is absolutely reasonable under the circumstances, and is certainly proportional to the needs/burdens imposed on the parties. *See generally Burnett v. Ford Motor Co.*, 2015 WL 3704599 (S.D.W. Va. June 12, 2015) (requiring the production of source code in a read-only format).

Change Healthcare does not believe it should be required to provide access to its proprietary database to an adversary in litigation, particularly where, as here, the parties agree that Somnia has had the underlying data since July 2018. Somnia has explained that it has requested this access because the data is unintelligible. Somnia does not appear to dispute, however, that it could hire (or could have hired) an expert to allow Somnia to read the data. Nonetheless, during the meet and confer process, Change Healthcare offered to make the BPI database available to Somnia's expert if such access would resolve both these disputes. Somnia rejected this offer and did not engage in any further meet and confers before seeking to file this joint letter.

| _/s/ Jason Hsi_ | _/s/ Charlie Spalding_ |
|---|---|
| JASON HSI | CHARLIE SPALDING |

6404189v.1